RONALD PROSSER, Plaintiff-Appellant, *v.* THE VILLAGE OF FOX LAKE *et al.*, Defendants-Appellees.

Second District   No. 80-411

Opinion filed March 17, 1981.

SEIDENFELD, P. J., dissenting.

D. Richard Joslyn, of Brydges, Riseborough, Morris, Franke & Miller, of Waukegan, for appellant.

Howard R. Teegen, of Soffietti, Johnson & Teegen, of Fox Lake, for appellees.

Mr. JUSTICE UNVERZAGT delivered the opinion of the court:

Plaintiff, Ronald Prosser, brought an action against the Village of Fox Lake to enjoin the payment of municipal salaries authorized by ordinances allegedly passed in violation of section 3—11—17 (Ill. Rev. Stat. 1979, ch. 24, par. 3—11—17) of the Illinois Municipal Code. The trial court granted summary judgment in favor of the Village of Fox Lake (hereafter Village) and plaintiff brings this appeal. The central issue is whether the failure of an elected trustee who is also acting village president to vote on a proposed ordinance during a meeting at which he is present represents a "concurrence" in the action taken by the majority of those who do vote sufficient to constitute "passage" within the meaning of section 3—11—17 of the Illinois Municipal Code.

The board of trustees of the Village of Fox Lake purportedly passed two ordinances on April 16, 1979, amending the administration provisions of the municipal code. Ordinance No. 79-5 established village president as a full time position and Ordinance No. 79-6 set compensation for the president at $22,000 per year. Five of the six trustees then holding office,

one of whom was the acting village president, attended the board meeting during which these ordinances were considered. The recorded vote in each instance was three "ayes," one "nay," and one "absent." Trustee Richard Hamm, then acting village president, was in attendance but did not vote on either measure on the advice of the village counsel that his vote was not necessary for passage. Both ordinances were designated "approved" and were signed by Hamm as acting president.

Plaintiff filed a complaint on October 26, 1979, and later an amended complaint, seeking to enjoin enforcement of the ordinances on the ground that the three "aye" votes did not represent a "concurrence" of a majority of "all members then holding office" as is required for passage under section 3—11—17 of the Illinois Municipal Code. Both parties filed motions for summary judgment. (Ill. Rev. Stat. 1979, ch. 110, par. 57.) The trial court held that the acting president "signed and approved" each ordinance even though he did not cast a vote, and that this was sufficient to signify his "concurrence." Thus, the requirement of section 3—11—17 of the Illinois Municipal Code that there be a "concurrence of a majority of all members then holding office" for passage of an ordinance was met. Since there was no genuine issue as to any material fact, the court entered summary judgment in favor of the Village and this appeal followed.

Plaintiff notes that even though Trustee Hamm was acting village president, he still retained his right to vote as a trustee. (Ill. Rev. Stat. 1979, ch. 24, par. 3—11—14.) Section 3—11—14 reads as follows:

"The mayor shall preside at all meetings of the city council. He shall not vote on any ordinance, resolution or motion except; (1) where the vote of the aldermen has resulted in a tie; or (2) where one half of the aldermen elected have voted in favor of an ordinance, resolution or motion even though there is no tie vote; or (3) where a vote greater than a majority of the corporate authorities is required by this Code to adopt an ordinance, resolution or motion. In each instance specified, the mayor shall vote. *Nothing in this section shall deprive an acting mayor or mayor pro tem from voting in his capacity as alderman, but he shall not be entitled to another vote in his capacity as acting mayor or mayor pro tem.*"[1] (Emphasis added.)

Accordingly, Trustee Hamm was authorized to vote in his capacity as trustee on any measure requiring a vote by the trustees; however, he was mandated to vote in his capacity as acting village president in three specific instances, and he was strictly limited to one vote on any one measure. Plaintiff contends the import of section 3—11—14 is that the

---

[1] Section 3—12—5 of the Illinois Municipal Code (Ill. Rev. Stat. 1979, ch. 24, par. 3—12—5) provides that the president and board of trustees have the same powers and duties as a mayor and city council.

election of Trustee Hamm as acting village president did not reduce the Village board to an odd number of trustees, and that valid passage of the ordinances in question required the concurrence of four of the six members of the Village board then holding office. Plaintiff here has reference to section 3—11—17 of the Illinois Municipal Code, which reads in pertinent part as follows:

> "The passage of all ordinances for whatever purpose, and of any resolution or motion (1) to create any liability against a city or (2) for the expenditure or appropriation of its money, shall require the concurrence of a majority of all members then holding office on the city council, including the mayor, * * *; *provided that, where the council consists of an odd number of aldermen, the vote of the majority of the alderman shall be sufficient to pass an ordinance.* * * * The yeas and nays shall be taken upon the question of the passage of the designated ordinances, resolutions, or motions and recorded in the journal of the city council." (Emphasis added.)

Plaintiff further contends that nothing short of a record showing a roll call with each individual's vote will constitute an aye/nay vote sufficient to comply with the statutory requirement for passage of an ordinance. Plaintiff cites *People ex rel. J. J. Anderson v. Chicago & North Western Ry. Co.* (1947), 396 Ill. 466, and *Village of Bourbonnais v. Herbert* (1967), 86 Ill. App. 2d 367, in support of his contention. Both of these cases specifically required the recording of "aye" or "nay" next to the name of each trustee; no other method of taking the vote was held to suffice under section 3—11—17 of the Illinois Municipal Code. *Bourbonnais*, at p. 373.

The Village argues that section 3—11—17 requires "concurrence" rather than an affirmative vote. It contends the fact that Trustee Hamm signed the ordinance as being approved rather than vetoing it per section 3—11—18 (Ill. Rev. Stat. 1979, ch. 24, par. 3—11—18) signified his concurrence in the passage of the ordinances. The Village draws the distinction between "concurrence" and an "affirmative vote" with reference to two other sections of the Illinois Municipal Code which specifically require an affirmative vote: section 11—74—6 which concerns the issuance of industrial revenue bonds, and section 11—91—1 which concerns the vacation of a street or alley. (Ill. Rev. Stat. 1979, ch. 24, pars. 11—74—6, 11—91—1.) Alternatively, the Village argues that Illinois has not abrogated the common law rule in regard to the failure to vote of a council member who was present and eligible to vote, to wit: "Whenever electors are present, and do not vote at all, * * * they virtually acquiesce in the election made by those who do." *Rex v. Foxcroft* (1760), 2 Burr. 1017, 1021, 97 Eng. Rep. 683, 685.

The Village also cites *Launtz v. People ex rel. Sullivan* (1885), 113 Ill. 137, correctly noting that the basis for the holding of this opinion is not

clear. It appears to us that in *Launtz* where four council members voted "aye" and four refused to vote, the court treated the four refusals to vote as nays, not ayes per the common law rule, because the court approved the action of the mayor in voting in order to break the "tie," when the mayor 'was not otherwise entitled to vote. One later case offered by the Village which cited *Launtz* offered its view of the underlying rationale for the common law rule; that is, council members whose presence at a meeting help to contribute to a quorum whereby the business of the council may be conducted should then not be allowed to impede the progress of legislation by refusing to vote when the roll is called. (*State ex rel. Young v. Yates* (1897), 19 Mont. 239, 47 P. 1004.) In another case cited by the Village as being the "closest reported case to the one before the court," *Babyak v. Alten* (1958), 106 Ohio App. 191, 154 N.E.2d 14, three of six council members voted aye, two voted nay and one did not vote. The mayor approved and signed the ordinance at that time. It was noted the ordinance would not be effective for 30 days and that counsel would check on whether or not the mayor should vote on the measure. According to the minutes of the next meeting in that case, the attorney advised that the mayor should vote and he voted aye. The Ohio Court of Appeals considered whether the ordinance was validly enacted in view of the delay between the vote of the council and the mayor. We observe that the mayor there was entitled to vote only in case of a tie vote. Despite the Ohio court's equivocation on whether or not there was a tie, it was clear it found the ordinance validly enacted due to the mayor's tie-breaking vote. The court there then discussed another reason why the ordinance should be declared validly enacted, holding that the common law rule construing a refusal to vote as acquiescence "is a proper and efficient rule to adopt, in order that municipal business shall be conducted with a proper regard to the wishes of its citizens." (106 Ohio App. 191, 197, 154 N.E.2d 14, 19.) It appears, though, that the court did not rely on the common law rule in finding the ordinance validly enacted because if it had, there would have been no tie vote and the mayor would not have been entitled to vote.

We do not dispute the utility of the common law rule in advancing the progress of legislation. However, we find it has no applicability in the context of the present case. Trustee Hamm was elected acting village president. As such, he played a dual role. Although he retained his ability to vote as a trustee on all measures, he had an affirmative duty to vote as acting mayor in three specific instances: (1) in case of a tie vote; (2) when half of the trustees had voted in favor of an ordinance, resolution or motion (which was the case here); or (3) where a vote greater than a majority of the corporate authorities was required. (Ill. Rev. Stat. 1979, ch. 24, par. 3—11—14.) The statute commands: "In each instance specified, the mayor shall vote." Section 3—4—6 at that time provided the

acting mayor "shall perform the duties and possess all the rights and powers of the mayor until a mayor is elected at the next regular election * * *." Ill. Rev. Stat. 1979, ch. 24, par. 3—4—6.

Accordingly, we believe Trustee Hamm had an affirmative duty to vote "aye" or "nay" because half of the trustees had voted in favor of the ordinances. We do not believe that his failure to vote under the limited facts of this case resulted in a concurrence even if we were to apply the common law rule because we do not equate an unintentional failure to vote with a refusal to vote, a "pass" vote, or an abstention. When one or a combination of the latter three instances reflects willful nonvotes by persons who are present at a meeting, the common law rule of acquiescence might reasonably be applied to allow passage of the business at hand if there is an affirmative majority vote of those who do vote. By an "affirmative majority vote" we mean that more persons have voted "aye" than "nay" or vice-versa. When there is no majority vote, there is a tie which, when broken by the mayor or village president as provided by statute, determines the favorable or negative character of the acquiescence.

We reject the Village's argument that Trustee Hamm's concurrence was evident by virtue of his signing of the ordinance as being approved. As discussed above, Trustee Hamm had an affirmative duty to vote, not merely concur. Accordingly, the record must have reflected his formal wish, choice or opinion in the form of an "aye" or "nay" vote. Further, we observe that even though his signature as acting village president signified his approval thereof, such approval is not contemplated until after the ordinance has been *passed* by the city council. If we were to accept the Village's argument, each signature of approval should be able to be counted as a "concurrence" if needed to make a majority. Obviously, such an interpretation would be contrary to the provisions of section 3—11—14 of the Code whereby the mayor does not participate in passage of an ordinance save in the three specific instances noted previously. Additionally, we note that an ordinance, resolution or motion can become effective despite the absence of the mayor's signature if he fails to return it to the council with his written objections within the designated time. Ill. Rev. Stat. 1979, ch. 24, par. 3—11—18.

We conclude that summary judgment was incorrectly granted to the Village under the facts of this case. Accordingly, we reverse. Summary judgment is hereby entered in favor of the plaintiff.

Reversed; summary judgment entered for plaintiff.

REINHARD, J., concurs.

Mr. PRESIDING JUSTICE SEIDENFELD, dissenting:

The majority determines that the common law rule of acquiescence (see, *e.g., Babyak v. Alten* (1958), 106 Ohio App. 191, 154 N.E.2d 14; *Northwestern Bell Telephone Co. v. Board of Commissioners* (N.D. 1973), 211 N.W.2d 399, 401-04) is not applicable to this case because it characterizes Hamm's failure to vote as unintentional. I believe that Hamm's inaction is better characterized as a willful nonvote and thus he must be held to have concurred with the majority of the trustees who did vote. On that basis, I find that a majority of all trustees holding office concurred in passage of the ordinances at issue so that the ordinances were validly enacted.

The majority avoids application of the common law rule by distinguishing between an unintentional failure to vote and a refusal to vote. Although the distinction may be valid in light of the purposes behind the rule, I do not perceive how Hamm's failure to vote can be called unintentional. The majority indicates that Hamm did not vote on the village counsel's advice that his vote "was not necessary for passage." The fact remains, however, that Hamm acted intentionally in not voting.

The situation might be different if Hamm were advised that he could not vote, or through inadvertence or mistake his vote was not recorded. In that event it might very well be unfair to invoke the rule of acquiescence. But in the case at bar Hamm evidently knew he had the power to vote and willfully abstained from casting his vote.

I agree with the majority that Hamm's act of signing the ordinances as acting village president does not in itself signify a concurrence. However, the fact that Hamm did thereby express his approval of the ordinances does indicate that application of the rule of acquiescence accords with Hamm's apparent attitude towards the challenged ordinances.

For the reasons stated above, I would affirm the judgment of the trial court upholding the ordinances.