THE PEOPLE *ex rel.* ONIE MANESS *et al.*, Plaintiffs—Appellants, *v.* DAVID COURSON, Mayor of the City of Elmwood, *et al.*, Defendants-Appellees.

Third District   No. 82—717

Opinion filed April 8, 1983.

Joseph M. Gibson, James E. Swanson, and Dorian LaSaine, all of Peoria, for appellants.

Bruce P. Fehrenbacher, of Whitney & Potts, Ltd., of Elmwood, for appellees.

JUSTICE SCOTT delivered the opinion of the court:

The plaintiff, Onie Maness, was appointed to the position of chief of police of the city of Elmwood, Illinois, on or about September 4, 1973, by the mayor of Elmwood, George McKinney. Although he was never reappointed to that office, the plaintiff continued to serve as chief of police until he was advised on April 2, 1982, by the defendant, David Courson, the newly elected mayor, that he was being removed. The plaintiff then filed a complaint against the defendant, and the city of Elmwood on April 15, 1982, contesting the actions of the mayor in terminating his employment as chief of police. The complaint prayed for injunctive relief to restrain the defendants from refusing to comply with statutory law regarding the plaintiff's removal and to allow him to remain as chief of police until he was properly removed and a successor chosen. The complaint also asked for a writ of *mandamus* directing the defendants to reinstate the plaintiff.

The plaintiff also filed a petition for preliminary injunction to enjoin the defendants from interfering with his functions as chief of police. The injunction was granted but subsequently dissolved upon the defendants' motion to vacate and/or dissolve the preliminary injunction.

Then on May 19, 1982, the defendants filed a motion for summary judgment on the plaintiff's complaint. They alleged that there were no genuine issues of any material facts. On May 4, 1982, the Elmwood City Council voted in a tie vote of three to three to approve the mayor's appointment. The mayor then voted to break the tie vote and his appointment was approved. As a result of the appointment of a qualified successor, the plaintiff had been removed from office. The defendants then asked that judgment be entered in their favor and the plaintiff's complaint be dismissed.

The trial court granted the defendants' motion for summary judgment. From that order, the plaintiff filed a timely appeal.

The issue raised by the plaintiff on appeal is whether the mayor of a municipal corporation, *i.e.*, the defendant, may vote to break a tie vote in the city council when the vote involves confirmation of the mayor's appointee to the office of chief of police. The plaintiff argues that the instant situation is not the kind of factual situation which falls under section 3—11—14(1) of the Illinois Municipal Code, regarding tie votes. He also contends that the concept of separation of powers is violated by allowing the executive branch to exercise legislative power.

■ The defendants claim that the issue presented by the plaintiff is not satisfactory. They state that the issue is not whether the mayor *may* vote in the situation presented here but whether he *must* vote. The defendants contend that the defendant Courson was required to vote to break the tie under section 3—11—14(1) (Ill. Rev. Stat. 1981, ch. 24, par. 3—11—14(1)), and therefore his actions were proper.

The Municipal Code provides that:

> "Unless otherwise specifically provided by statute, all officers of any city shall be appointed by the mayor by and with the advice and consent of the city counsel. ***" (Ill. Rev. Stat. 1981, ch. 24, par. 3—7—2.)

In keeping with that statute, the defendant Courson appointed James T. Wilson as chief of police and a resolution to approve that appointment was put before the city council for a vote. The council voted to approve the appointment. Contrary to the plaintiff's argument, the two-step process of appointment and advice and consent was followed in the instant case.

The other pertinent statute involved herein provides that:

> "The mayor shall preside at all meetings of the city council. He shall not vote on any ordinance, resolution or motion except; (1) where the vote of the aldermen has resulted in a tie; or (2) where one half of the aldermen elected have voted in favor of an ordinance, resolution or motion even though there is no tie vote; or (3) where a vote greater than a majority of the corporate authorities is required by this Code to adopt an ordinance, resolution or motion. ***" (Ill. Rev. Stat. 1981, ch. 24, par. 3—11—14.)

The language of the statute commands that the mayor shall vote in three specific instances. This section has been construed to mean that the mayor has an affirmative duty to vote in the three specific situations set out in the statute. *Prosser v. Village of Fox Lake* (1981), 94

Ill. App. 3d 78, 418 N.E.2d 461.

The facts in *Prosser* involved a village, a board of trustees and an acting village president. However, the powers and the duties of a board of trustees and a village president are the same as those of the aldermen of a city and a mayor, respectively, except as otherwise provided in the Municipal Code. Ill. Rev. Stat. 1981, ch. 24, pars. 3—8—1, 3—12—2, 3—12—3.

In *Prosser*, the board of trustees purportedly passed two ordinances, the first one established the position of village president as full-time, and second, set compensation for the president at $22,000 per year. Five of the six trustees holding office, including the acting village president, were at the meeting where these ordinances came up for a vote. The vote cast included three "ayes," one "nay" and one "absent." The acting village president did not vote on either ordinance.

The plaintiff Prosser filed a complaint to enjoin the enforcement of the ordinances on the ground that they lacked a vote of "concurrence" of the majority. The trial court held that the acting president signed and approved the ordinances and by so doing, signified his concurrence. The plaintiff appealed.

The reviewing court found that the acting president had an affirmative duty to vote "aye" or "nay" because one half of the trustees voted in favor of the ordinances. He could not merely concur. His signature on the ordinances did not establish concurrence without his vote.

■ Although the situation in *Prosser* is unlike the one in the instant case because it did not concern the approval of a mayor's appointee, it is relevant in two respects. First, it establishes that the mayor must vote in the situation where there is a tie vote of the aldermen, as the defendants contend. Second, it counters the plaintiff's argument regarding the concept of separation of powers. In *Prosser*, the court found that the village president had to vote on ordinances concerning two things in which he had a self-interest: making the position of president full-time and setting the president's salary. The fact that the defendant voted on the approval of his appointee in the instant case was not improper because of a separation of powers.

The plaintiff also argues that section 3—11—14 refers to mandated action to resolve legislative deadlocks or insufficiencies in legislative proposals but does not apply to actions to approve an executive appointment. The statute does provide that the mayor shall not vote on "any ordinance, resolution or motion," except where there is a tie, or either of two other exceptions. However, there is no limitation to

any particular kind or class of business in which the tie-breaking vote may be cast. (*Siegel v. City of Belleville* (1931), 267 Ill. App. 264.) The *Siegel* court was faced with a similar statute providing for the casting of the mayor's vote when there was a tie in the city council.

The approval of the defendant's appointment in the case at bar was put before the city council in the form of a resolution. The resolution was proposed by a motion from an alderman. The vote resulted in a tie. Under these circumstances and pursuant to section 3—11—14(1), the defendant was required to cast his vote to break the tie.

His actions and those of the council were proper in order to prevent a deadlock.

Therefore, based on the above reasoning, the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

STOUDER, P.J., and BARRY, J., concur.